UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE NASHVILLE DIVISION

RECEIVED
JUL 31 2025
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

| | |
|---|---|
| ROY ALLEN CARTER, ) | |
| KRYSTLE LEE JENNINGS ) | |
| Pro se Petitioners ) | |
| ) | |
| v. ) | Case No._____ |
| ) | |
| MARGIE QUINN, Commissioner, ) | |
| Tennessee Department of Children's Services ) | |
| Respondent ) | |
| ) | |

## PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241

COME NOW the Petitioners, Roy Allen Carter and Krystle Lee Jennings, pro se, as next friends

of their minor children pursuant to 28 U.S.C. § 2241, and respectfully petition this Honorable

Court for the issuance of a writ of habeas corpus to remedy the unlawful and unconstitutional

detention of their children by state actors acting under color of law.

## I. JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 2241(c)(3), which allows habeas corpus
   review where a person is "in custody in violation of the Constitution or laws... of the
   United States."

2. Venue is proper in the Middle District of Tennessee because the children are currently
   held in state custody within this district, and the Respondent resides or may be found
   here.

## II. PARTIES

1    3. Petitioners Roy Allen Carter and Krystle Lee Jennings are the natural parents of the

2        minor children at issue (KC and TC). They bring this petition as their next friends, having

3        consistently asserted their parental rights and maintained a committed marital relationship

4        for over 17 years.

5    4. Respondent Margie Quinn is the official presently exercising custody and control over

6        the children through the Tennessee Department of Children's Services (DCS).

7    **III. STATEMENT OF FACTS**

8    On or about October 22, 2019, the minor children of Petitioners were seized by Tennessee

9    Department of Children's Services (TDCS) without a valid warrant, without exigent

10   circumstances, and without a court order issued following a hearing or any form of due process.

11   The removal was predicated on a false medical referral that state actors knew or should have

12   known was invalid.

13   According to Michele Estez, Regional Nursing Director for the Tennessee Department of Health,

14   the agency employee who submitted the referral to TDCS used a growth chart for full-term

15   infants, rather than the corrected-age formula required for preterm infants under state policy and

16   Bright Futures pediatric standards. The child in question was born six weeks premature on

17   March 16, 2019, weighing 4.5 lbs. By the time of removal on October 22, 2019, he had reached

18   11.5 lbs, reflecting a healthy growth trajectory, which was confirmed by both Harton Hospital

19   and St. Thomas Rutherford Hospital just 3-4 days prior to removal.

20   Estez acknowledged the error in a phone call to Petitioners shortly after the removal, admitting

21   the wrong chart had been used. However, after informing her that the TDCS had removed the

22   children, and Tennessee Attorney General's Office had become involved, she ceased all contact.

23   The erroneous referral was never withdrawn or corrected, and instead became the foundation for

1    any TDCS involvement. This known misrepresentation—never corrected—initiated a pattern of

2    misconduct involving suppression of exculpatory evidence, procedural fraud, and denial of

3    access to justice. The proper formula to determine the appropriate weight of premature infants is

4    a matter of public record.

5    No preliminary hearing was ever held to adjudicate the lawfulness of the removal. Instead, a

6    series of fraudulent documents—juvenile petitions and affidavits bearing altered filing stamps

7    and signatures—were used to create the appearance of legal process. These documents bore the

8    name and stamp of **Lynne D. Foster**, the former Cannon County Juvenile Clerk who had retired

9    in 2016, but whose name and credentials were fraudulently applied to initiate proceedings in

10   2019.

11   The current clerk, **Katina George**, knowingly accepted and processed these forged filings,

12   refused to accept court documents from Petitioners, and obstructed access to court records. She

13   opened sealed mail addressed to the court, reviewed the contents, and then resealed and refused

14   delivery. These actions are documented in **Exhibits F, G, H, J, and K** of the companion federal

15   filing.

16   Petitioners were assigned multiple court-appointed attorneys, many of whom waived hearings

17   and legal rights without consent. One such attorney, **Tammy Womack**, has since admitted this

18   in her formal response to the Tennessee Board of Professional Responsibility (**Exhibit E**). These

19   court actors, operating under a closed and dynastic court structure, enabled the deprivation of

20   fundamental parental rights without due process.

21   Medical records requested by DCS from Harton Hospital and St. Thomas Rutherford—dated

22   October 17 and 18, 2019—contained no findings of neglect or abuse. These exculpatory records

1    were withheld from the court and only later entered into the federal record (**Exhibit M**). The

2    juvenile court never acknowledged or admitted them into evidence.

3    Despite the absence of adjudication or a finding of parental unfitness, the State proceeded with a

4    Termination of Parental Rights (TPR), ultimately holding consolidated hearings years later

5    without ever having lawfully initiated custody. The entire TPR proceeding was tainted by

6    jurisdictional defects, fraudulent documents, concealed evidence, and pretextual findings—all of

7    which were challenged in state courts and ignored.

8    The children remain in DCS custody to this day based on the procedurally and constitutionally

9    void process described above.

10

11   **A. Retaliatory Threats and Coercion**

12   As part of the State's ongoing effort to suppress the parents' defense and insulate its misconduct

13   from exposure, various state actors—including TDCS agents, court-appointed attorneys, and

14   judicial officers—engaged in coordinated threats of incarceration against both parents, even in

15   open court (June 2, 2023). These included repeated efforts to hold them in contempt for failing to

16   pay involuntary and punitive "child support" obligations imposed without lawful authority, after

17   the unlawful removal of their children. These financial demands functioned as tools of coercion,

18   not legitimate enforcement.

19

20   Petitioner Roy Carter was additionally threatened with incarceration for allegedly violating a no-

21   contact order that had been issued without any notice, hearing, or legal justification. That order,

22   which lacked legal authority, was used to isolate the children and prevent the family from

23   maintaining contact. These coercive threats were part of a calculated effort to "ice" the parents—

1   intimidating them into silence, obstructing their participation in the legal process, and preventing

2   them from exposing the fraudulent documents, due process violations, and systemic misconduct

3   underlying the entire proceeding.

4   These actions violated Petitioners' rights under the First, Fourth, and Fourteenth Amendments,

5   and demonstrate the retaliatory nature of the custody proceedings. The use of legal process as a

6   weapon to chill speech and suppress defense further underscores the need for immediate federal

7   relief.

8

9   **IV EXHAUSTION OF STATE REMEDIES**

10  Petitioner has exhausted all available and effective remedies under Tennessee law, as required by

11  28 U.S.C. § 2254(b)(1)(A). Contrary to any anticipated assertion that Petitioner waived relief by

12  not pursuing further discretionary review in the Tennessee Supreme Court, federal law imposes

13  no such requirement where the state courts have already denied relief on constitutional issues.

14  Petitioner sought extraordinary review in the Tennessee Supreme Court pursuant to Tennessee

15  Rule of Appellate Procedure 10, raising clear constitutional objections to the process, including

16  the lack of adjudication, the use of forged documents, the denial of access to the record, and the

17  collusion of ineffective representation. That Rule 10 application was denied without explanation,

18  as documented in **Exhibit I**.

19  In addition, Petitioner submitted multiple constitutional motions and objections in the Tennessee

20  Court of Appeals—each of which was either ignored, denied sua sponte, or bypassed

21  procedurally to prevent review. These include the May 26, 2025 **Constitutional Objection and**

22  **Supplemental Memorandum** (denied without hearing, **Exhibit A**), the May 22, 2025 **Judicial**

23  **Notice and Rule 24(e) Supplemental Motion** (also denied without addressing the fraud in the

1   record, **Exhibit B**), the February 18–20, 2025 **As-Applied Constitutional Challenge and 48-**

2   **Hour Denial (Exhibit C)**, and the July 18, 2025 **Final TN Court of Appeals Order**, which was

3   entered while constitutional issues remained pending (**Exhibit Q**). Petitioner also filed a

4   constitutional challenge to Tenn. Code Ann. § 36-1-116(f)(2), enabling the adjudication to be

5   indefinitely postponed (**Exhibit D**).

6   Under federal precedent, this is sufficient. As the U.S. Supreme Court held in *O'Sullivan v.*

7   *Boerckel*, 526 U.S. 838, 845 (1999), while exhaustion generally requires presenting federal

8   claims to the highest court of the state, it does **not** require pursuing discretionary review **where it**

9   **is not a regular part of the appellate process or where doing so would be futile**. The Sixth

10  Circuit and other federal courts have consistently held that denial of discretionary review by a

11  state's highest court, or failure to seek such review when prior avenues have already denied

12  relief, **does not preclude federal review** where the petitioner's claims have been fairly

13  presented and rejected.

14  Moreover, in *Castille v. Peoples*, 489 U.S. 346, 351 (1989), the Court clarified that once a claim

15  is presented in a procedural posture that allows for consideration of the federal issues, exhaustion

16  is satisfied—even if no written opinion is issued. And in *Wilwording v. Swenson*, 404 U.S. 249,

17  250 (1971), the Court stated plainly: "Exhaustion of state remedies does not require the repeated

18  assertion of a constitutional claim in successively higher state courts if it has once been fairly

19  presented."

20  Petitioner respectfully submits that the Tennessee appellate courts have had ample opportunity to

21  address the constitutional violations asserted—and that their continued failure to do so

22  constitutes a constructive denial. Any further attempt to seek relief in the Tennessee Supreme

1     Court would be duplicative and futile. Accordingly, the exhaustion requirement is satisfied, and

2     no procedural default or waiver can be fairly asserted.

3     Petitioner further asserts that the exhaustion requirement is satisfied not only because state courts

4     had the opportunity to review the constitutional violations, but because they **deliberately**

5     **refused to do so**. At each level of state review, procedural maneuvers were used to avoid

6     confronting the legality of the children's continued custody. This was not error — it was a

7     **systemic cover-up** designed to preserve the financial and institutional interests of those

8     benefitting from the unlawful removals.

9     The misconduct described herein was not limited to a few rogue actors. Judges, clerks, and even

10     the Tennessee appellate courts participated in concealing or endorsing procedural fraud, forged

11     documents, and constitutional violations. At each level of review, state actors declined to

12     intervene, ignored filed objections, or engaged in procedural gamesmanship to avoid addressing

13     the lawfulness of the children's continued custody. This systemic insulation reflects not mere

14     error, but a **coordinated effort to protect the financial and institutional interests of those**

15     **benefitting from the unlawful seizure and retention of children**. The refusal to correct clear

16     violations—despite documented notice and overwhelming evidence—demonstrates a conspiracy

17     under color of law, designed to preserve access to **federal incentive funding tied to child**

18     **removals, adoptions, and TPR proceedings**. These structural incentives have corrupted the

19     legal process and transformed state family courts into self-interested instruments of deprivation,

20     immune from correction without federal intervention.

21     **V. GROUNDS FOR RELIEF**

22     The continued detention of the children violates the U.S. Constitution and federal law, including:

23        **a. Fourteenth Amendment** — deprivation of due process and familial liberty;

1    **b. Fourth Amendment** — unlawful seizure without judicial authorization;

2    **c. Santosky v. Kramer**, 455 U.S. 745 (1982) — failure to apply heightened standard of proof

3    in proceedings affecting parental rights;

4    **d. United States v. Throckmorton**, 98 U.S. 61 (1878) — fraud upon the court renders all

5    resulting judgments void;

6    **e. Chrissy F. v. Mississippi Dept. of Public Welfare**, 995 F.2d 595 (5th Cir. 1993) —

7    habeas relief appropriate where custody obtained through fraud and denial of due process.

8

9    **VI. STATE-MANUFACTURED GROUNDS FOR TERMINATION**

10    The purported statutory grounds for termination were **created by the State itself**, through a

11    pattern of delay, alienation, suppression of services, and procedural obstruction.

12    Tennessee law—including **T.C.A. §§ 37-1-129(c), 37-1-166**, and applicable federal standards

13    under Title IV-E—requires prompt adjudication, reasonable efforts to preserve families, and

14    procedures that comply with constitutional guarantees.

15    None of these standards were honored. DCS and the juvenile court:

16    a. Withheld exculpatory evidence;

17    b. Prevented access to hearings and filings;

18    c. Denied Petitioners contact with their children;

19    d. Created the very circumstances later used to justify TPR.

20    As held in **In re J.T.S., 273 S.W.3d 1 (Tenn. Ct. App. 2008)**, courts must·evaluate whether the

21    State itself created the conditions supporting termination. Here, the State did so deliberately.

22    The TPR is thus **void ab initio** and constitutionally infirm. Furthermore, the resulting custody

1 arrangement is a **fruit of the poisonous tree**, infected at every stage by fraud and due process

2 violations.

3 The same actors obtained federal Title IV funding based on fabricated grounds, potentially in

4 violation of the **False Claims Act, 31 U.S.C. §§ 3729–3733**, and may be liable under **42 U.S.C.**

5 **§ 1985** (civil conspiracy) and **18 U.S.C. § 1962** (RICO).

6 **VII. INCORPORATION OF EXHIBITS AND REQUEST FOR CLARITY**

7 Petitioners incorporate by reference the filings and evidentiary exhibits from their related civil

8 action, *Carter v. TDCS et al.*, Case No. 3:22-cv-00247 (M.D. Tenn.), including:

9 a. D.E. 108 (Motion to Lift Stay),

10 b. D.E. 110 (Motion for Emergency TRO),

11 c. D.E. 109 and 111 (supporting memoranda),

12 d. D.E. 107 (SEALED Notice of Filing and Exhibits A–M).

13 e. D.E. 128 (REDACTED Exhibits A-O)

14 These documents include authenticated and undisputed evidence of forgery, denial of access,

15 obstruction, and exhaustion of state remedies.

16 Petitioners invoke **judicial notice** of filings within this District pursuant to **United States v.**

17 **Ahidley**, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007) and **Anderson v. Coughlin**, 700 F.2d 37, 41

18 (2d Cir. 1983).

19 Petitioners do **not** seek duplicative review or to burden the record, but respectfully stand ready to

20 submit cleaner or supplemental copies upon the Court's notice, in accordance with Local Rule

21 5.01.

1    VIII. REFERRAL FOR FEDERAL INVESTIGATION

2    Petitioners respectfully request referral to the U.S. **Department of Justice** and **Department of**

3    **Health and Human Services** for immediate investigation.

4    The record supports credible allegations of systemic fraud, deprivation of civil rights under color

5    of law, and misuse of federal child welfare funding through deliberate concealment and

6    obstruction.

7    The patterns suggest a coordinated enterprise involving clerks, attorneys, judges, and agency

8    personnel—well beyond any ordinary state mistake.

9    **IX. RELIEF REQUESTED**

10   **WHEREFORE**, Petitioners respectfully request that this Court:

11       **a. Issue a writ of habeas corpus** to Respondent, directing her to show cause for the

12   continued custody;

13       **b. Declare** the children's current detention unlawful under federal law and order their release

14   from state custody, or alternatively, restore familial contact and enjoin further state action

15   pending a full and constitutionally valid hearing;

16       **c. Declare the dependency and termination proceedings void** for constitutional violations

17   and fraud;

18       **d. Enjoin any adoption or further state action** that infringes upon Petitioners' federal

19   rights;

20       **e. Take judicial notice** of Exhibits A–Q in *Carter v. TDCS*, Case No. 3:22-cv-00247, and

21   permit leave to supplement if the Court so directs;

22       **f. Refer this matter** to the U.S. Attorney and relevant federal agencies for investigation and

23   potential prosecution;

1    g. And grant any other relief this Court deems just and proper.

2    **X. CONCLUSION**

3    This case is not about an ordinary state custody dispute. It is about a systemic deprivation of

4    constitutional rights through fraud, suppression, and official misconduct—none of which have

5    been corrected by the state courts. The children have been held for years without a legal order

6    from any court or a valid adjudication, in violation of the most basic principles of due process.

7    Federal intervention is not only appropriate, it is necessary. Petitioners respectfully request

8    immediate relief to prevent further irreparable harm to their family.


9    **Respectfully submitted,**

10

11   Roy Allen Carter, pro se

12   310 Bradford Dr.

13   Crossville TN 38555

14   rcarter1468@gmail.com

15   615-295-9258

16

17   Krystle Lee Jennings, pro se

18   310 Bradford Dr.

19   Crossville TN 38555

20   krystle.jennings12@gmail.com

21   615-318-7814

22

23   Date: 7-26-2025

24

25

1    **VERIFICATION / DECLARATION UNDER PENALTY OF PERJURY**

2    We, the undersigned Petitioners, declare under penalty of perjury that the facts stated in this
3    Memorandum of Law and the accompanying Petition for Writ of Habeas Corpus are true and
4    correct to the best of our knowledge, information, and belief. This declaration is made pursuant
5    to 28 U.S.C. § 1746.

6    Executed on this 26th day of July, 2025.

7

8    Roy Allen Carter, pro se
9    310 Bradford Dr.
10   Crossville TN 38555
11   rcarter1468@gmail.com
12   615-295-9258

13

14

15   Krystle Lee Jennings, pro se
16   310 Bradford Dr.
17   Crossville TN 38555
18   krystle.jennings12@gmail.com
19   615-318-7814

20

21

22

23

<u>ORIGINAL DOCUMENTS</u>

EMERGENCY HABEAS CORPUS FILING
28 U.S.C. 2241 -PRO SE
Roy Allen Carter + Krystle Lee Jennings
Original + Exhibits A-Q (incorporated by Reference)
Copy 1 of 3

U.S. District Court - Middle District of Tennessee





# UNITED STATES POSTAL SERVICE®

| PRIORITY® MAIL

PRIORITY MAIL
POSTAGE REQUIRED

- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply).*
- USPS Tracking® service included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at *http://pe.usps.com.*
** See International Mail Manual at *http://pe.usps.com* for a

## MAILING ENVELOPE
### FOR DOMESTIC AND INTERNATIONAL

To schedule free Package Pickup,
scan the QR code.

USPS.COM/PICKUP

## TRACKED ■ INSURED

PS00000133100

EP14 July 2022
OD: 15 x 11.625

---

UNITED STATES POSTAL SERVICE® | PRIORITY® MAIL

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM: 310 Bradford Dr.
Crossville, TN 38555

RECEIVED
JUL 3 1 2025
U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

TO:
U.S. District Court Clerk
Fred Thompson Federal
Building
719 Church St #1300
Nashville, TN 37203

Label 228, December 2023    FOR DOMESTIC AND INTERNATIONAL USE

---

Retail

US POSTAGE PAID
**$16.05**    Origin: 38555
07/28/25
4721240555-45

PRIORITY MAIL®

1 Lb 8.30 Oz

RDC 03

EXPECTED DELIVERY DAY: 07/31/25

C019

SHIP
TO:
STE 1300
719 CHURCH ST
NASHVILLE TN 37203-7095

USPS SIGNATURE® TRACKING #

9510 8139 5991 5209 1263 08

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE